In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way for Legislative Route 1016, Section 11B, a Limited Access Highway in Glenfield Borough, Allegheny County, Pennsylvania. Gregg H. Jones and Essie Jones, his wife. Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Argued October 31, 1975, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*Benjamin B. Wechsler,* Special Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellant.

*Leonard M. Mendelson,* with him *Hollinshead and Mendelson,* for appellees.

OPINION BY JUDGE KRAMER, March 11, 1976:

This is an appeal by the Department of Transportation (condemnor) from an order of the Court of Common Pleas of Allegheny County, dated February 3, 1975, which ordered that the condemnor pay to Gregg H. Jones and Essie Jones (condemnees) $22,500 for the value of condemned property and $4,500 as a replacement housing supplement. The question we must decide is whether, under the facts of this case, the $4,500 housing supplement should be deducted from the general award of $22,500. We hold that such a deduction is required and reverse.

The parties filed a joint petition with the trial court which set forth an agreed stipulation of facts and requested the resolution of a purely legal question. The stipulation provides the following relevant facts.

The condemnees were the owners of a tract of land and home which were the object of a *de facto* taking by the condemnor. Possession was relinquished on March 17, 1970 and, sometime in 1970, the condemnees were paid estimated just compensation of $13,250. In addition to this sum, and pursuant to the then Section 615 of the

Eminent Domain Code,[1] the condemnor determined that the condemnees were entitled to $3,500 as a housing supplement. This amount was fixed as a result of the condemnor's determination of the average market price of dwellings comparable to the one taken from the condemnees. In this respect, Section 615 provided as follows:

"In addition to amounts of damages otherwise authorized, the condemnor shall, as is hereinafter provided, make a payment to the condemnee whose real property is improved by a single, two, or three-family dwelling actually owned and occupied by the condemnee for not less than one year prior to the condemnation. *Such payment, not to exceed five thousand dollars ($5,000), shall be the amount, if any, which, when added to the acquisition payment, equals the average price required for a comparable dwelling determined to be a decent, safe and sanitary dwelling* adequate to accommodate the condemnee, reasonably accessible to public services and places of employment and available on the private market." (Emphasis added.)

The $3,500 was revised on May 21, 1970, after an appeal to "an Appeal Board of the Department of Transportation." Condemnees were paid a housing supplement of $4,500 based upon a determination that comparable replacement housing would cost $17,750, and not $16,600 as had been originally determined.

At the time they accepted payment of the $4,500 the condemnees signed a document entitled "CLAIM FOR PAYMENT / REPLACEMENT HOUSING SUPPLEMENT" which, *inter alia*, contained the following "Claimant's Agreement":

"I (WE) AGREE that, *In the event of litigation* of the above right of way claim and/or this supplemental payment, *the amount of general damages contained in any final judgment* rendered in my (our) behalf *shall be reduced so that the said general damages and the*

1. Act of December 5, 1969, P.L. 326.

*replacement housing payment paid on the basis of this application do not exceed the cost of a dwelling comparable to the one taken, as determined by the Department of Highways, the viewers or court, as the case may be;* but in no event shall the judgment be reduced by more than the amount of the aforesaid replacement housing payment." (Emphasis added.)

This document was signed by the condemnees on June 17, 1970.

The condemnees had petitioned for the appointment of a Board of Viewers, being unsatisfied with the condemnor's payment of $13,250. On May 7, 1975, the Board of Viewers awarded general damages of $22,500 and no appeal from the report was taken by either party. The condemnor, in making payment under the Board's award, deducted the $13,250 already paid as general damages *and* the $4,500 housing supplement, taking the position that the total compensation should be only $22,500. The condemnees maintain that they are entitled to both the Board's award *and* the housing supplement, a total of $27,000.

In determining whether the condemnor's deduction was proper, we must begin with the statutory provision under which the condemnees claimed the housing supplement. Section 615 of the Code established a right to payment (up to $5,000) of the amount (if any) by which the "acquisition payment" falls short of the "average price required for a comparable dwelling." The statute is silent on two important points in that it does not specify (1) who is to determine the price of a comparable dwelling and (2) what is meant by the term "acquisition payment."

On the first point, it appears that the condemnor's appraisers set an initial figure for a comparable dwelling, with provisions for appeal within the Department if the condemnee is dissatisfied. The record establishes that such an appeal was taken, the amount revised, and apparently the condemnees were satisfied that these proceedings were regular and that the amount, as revised, was acceptable.

We thus must accept the figure of $17,750 as the "average price required for a comparable dwelling."

The determination of the "acquisition payment" figure is somewhat more troublesome. "Acquisition payment" may mean either the $13,250 paid to actually acquire possession, or, it may refer to the general damages ($22,500) which reflect the *ultimate* cost of acquiring condemnees' property. We conclude that the amount of general damages represents the "acquisition payment" described in Section 615.

Our review of Section 615 indicates that the statute contemplated the possibility that there may be a difference between the value of the condemned property and the cost of securing a substitute dwelling. Indeed, were this not so, there would be no reason for the housing supplement. It is also apparent, however, that the language of Section 615 does not necessarily assume that the substitute dwelling will cost *more* than the value of the condemned property. The statute says that the payment shall be the amount, *if any,* that equals the difference between the "acquisition payment" and the cost of a comparable dwelling. Accepting the condemnor's determination that $17,500 represents the cost of a comparable dwelling, it becomes clear that since the actual value of $22,500 exceeds this figure the condemnees are not entitled to a housing supplement.

This conclusion, of course, assumes that the "acquisition payment" equals the general damages of $22,500. This is the construction of the term "acquisition payment" which is reflected in the agreement drafted by the condemnor and signed by the condemnees.

The correctness of the conclusion that "acquisition payment" is the equivalent of general damages is demonstrated by a close examination of the effect of the condemnees' argument.

The crux of that argument is that the condemnor's decision that a $4,500 supplement was in order only means that a gap of $4,500 existed between the fair mar-

ket value of the condemned property and the cost of a comparable dwelling—regardless of what the fair market value is ultimately determined to be. Interestingly, the condemnees also argue that the difference between the Board's award of $22,500 and the condemnor's determination of $17,500 indicates that the condemnor "evidently misapprehended the characteristics of the condemned property."

Thus, the condemnees, while taking the position that the condemnor did not fully appreciate the value of the property, ask us to accept the theory that the condemnor accurately determined that a gap of $4,500 exists between market value and the cost of replacement housing. They wish to accept the benefit of the $4,500 differential while they reject the basis on which it was determined—the difference between the estimated value of the condemned property and the cost of replacement housing.

The difficulty of this case arises because the ultimate value of the property was determined by the Board of Viewers, while the housing supplement was determined by the condemnor and its internal appeal board. Since condemnees raise no question concerning the decision of the appeal board, we must accept its determination (as the condemnees did), and only note that the anomalous situation which has been created is the result of the two independent proceedings.

As a result of our conclusion that under these facts the condemnees are not entitled to the housing supplement, we need not deal directly with the question of whether the agreement signed by the condemnees is unconscionable and unenforcable. We merely note that its terms, while not a masterpiece of draftsmanship, are consistent with our construction of Section 615 of the Code.

The order of the Court of Common Pleas is reversed to the extent that it precluded the deduction of the $4,500 housing supplement.